IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID A. ROWLAND, Executor of
the Estate of William A. Rowland,

    Plaintiff,

      v.

GREGG A. ROWLAND and ANNE
C. ROWLAND,

    Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-2068-TWT

OPINION AND ORDER

This is an action for breach of fiduciary duty.  It is before the Court on the

Plaintiff's Motion for Partial Summary Judgment [Doc. 111], the Defendants' Motion

for Summary Judgment [Doc. 153], the Defendants' Motion for Oral Argument [Doc.

159], and the Plaintiff's Motion for Oral Argument [Doc. 160].  For the reasons set

forth below, the Plaintiff's Motion for Partial Summary Judgment is DENIED, the

Defendants' Motion for Summary Judgment is GRANTED, and the Motions for Oral

Argument are DENIED.

I.  BACKGROUND

T:\ORDERS\04\Rowland\msjtwt.wpd

In 1993, William A. Rowland ("Mr. Rowland"), a resident of North Carolina, moved in with Defendants Gregg and Anne Rowland, his son and daughter-in-law. He continued to reside with the Defendants, first in Virginia and then in Alpharetta, Georgia, until May of 2001.  Prior to leaving North Carolina, Mr. Rowland executed a Power of Attorney, naming Gregg Rowland as his attorney-in-fact.  The Power of Attorney granted to Gregg Rowland "full authority and power" to manage and attend to William Rowland's "affairs, interests and property" and "to do and to perform all and every act or thing whatsoever necessary for [his] upkeep, care and maintenance . . . ."  (Power of Attorney, ¶¶ 1, 4.)  The Power of Attorney also required Gregg Rowland to keep records of all transactions taken on behalf of William Rowland and to render annual accountings of the transactions.  (Id., ¶ 3.)  After moving in with the Defendants, Mr. Rowland added Anne Rowland as a joint account holder on his checking account, allowing her to withdraw funds and sign checks on his behalf.

Mr. Rowland owned an annuity through Phoenix Home Life Mutual Insurance Company, valued in excess of $200,000.00.  Between November 1998 and February 2001, Gregg Rowland signed several annuity surrender authorization forms on Mr. Rowland's behalf, for a total pre-tax surrender of $90,000.00.  (Verified Compl., Ex. B.)  Anne Rowland also wrote a number checks from Mr. Rowland's account: (1) eight checks, totaling $55,100.00, as gifts to Gregg and Anne Rowland; (2) 32 checks,

totaling $70,597.30, as agreed upon monthly contributions to the Defendants' household expenses[1]; (3) 13 checks, totaling $31,205.00, as agreed upon monthly contributions plus reimbursements for additional expenses; and (4) three checks, totaling $2,445.00, for specific reimbursements, not including monthly contributions. (Pl.'s Mot. for Partial Summ. J., Ex. 3.)  All of these checks were deposited into the Defendants' bank account.  According to the Defendants, each of these transactions was expressly authorized by William Rowland.

In May of 2001, after residing with the Defendants for approximately eight years, Mr. Rowland moved to Greensboro, North Carolina, and began residing with his other son, Plaintiff David Rowland and his wife.  The Plaintiff alleges that shortly after moving to North Carolina, Mr. Rowland became concerned about his finances. As a result of this concern, he made a number of changes to his personal affairs, including naming David Rowland as his attorney-in-fact and revoking the previous Power of Attorney granted to Gregg Rowland; executing two new wills, which left Mr. Rowland's entire estate to David Rowland; and changing the beneficiaries of his

---

[1] Mr. Rowland's wife, Norma, was diagnosed with breast cancer in 1991 and died in 1993.  In anticipation of her death, arrangements were made for Mr. Rowland to live with the Defendants.  According to the Defendants, as part of these arrangements, Mr. Rowland and his wife expressed the desire to contribute $2,000.00 to the Defendants' household each month.  At some point, the monthly contribution was increased to $2,500.00.  (A. Rowland Dep. at 91-94; G. Rowland Dep. at 22-23.)

annuity and life insurance policies to David Rowland.  In addition, Mr. Rowland filed this action on January 24, 2002, alleging financial abuses related to the annuity surrenders and checks executed by Gregg and Anne Rowland.[2]  Specifically, Mr. Rowland asserted claims against Gregg Rowland for breach of fiduciary duty and requested an accounting of all financial transactions made by Gregg Rowland on Mr. Rowland's behalf.  He asserted a claim for aiding and abetting breach of fiduciary duty against Anne Rowland.  Mr. Rowland also alleged that the Defendants are liable for conversion, constructive fraud, civil conspiracy to commit conversion, unfair and deceptive trade practices, and punitive damages.  Following William Rowland's death in July of 2003, David A. Rowland, as executor of the estate of William Rowland, was substituted as Plaintiff in this action.  The Plaintiff now moves for summary judgment on the conversion, breach of fiduciary duty, and constructive fraud claims.  The Plaintiff has expressly abandoned the claims for unfair and deceptive trade practices and aiding and abetting breach of fiduciary duty.  The Defendants move for summary judgment on all of the Plaintiff's remaining claims.

## II.  SUMMARY JUDGMENT STANDARD

---

[2]William Rowland originally filed suit in the Middle District of North Carolina. On May 28, 2004, the action was transferred to this Court pursuant to 28 U.S.C. § 1406(a).

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III. DISCUSSION

#### A. Conversion

The Plaintiff contends that by removing money from William Rowland's annuity and checking account and then depositing the money into their own account, the Defendants are liable for the intentional tort of conversion. Conversion is "[a]ny distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with [his right]." Decatur Auto Ctr. v. Wachovia Bank, N.A., 276 Ga. 817, 819 (2003); Maryland Cas. Ins. Co. v. Welchel, 257 Ga. 259, 261 (1987). The exercise of dominion over either tangible personalty or specific

intangible property can support a claim for conversion.  Money is often considered fungible intangible personal property because it cannot be differentiated by specific identification in a particular fund.  Taylor v. Powertel, Inc., 250 Ga. App. 356, 359 (2001).  Therefore, unless the money comprises a specific and identifiable fund, a claim of conversion of a sum of money cannot be sustained.  Decatur Auto Ctr., 276 Ga. at 819-20; Taylor, 250 Ga. App. at 359.  Here, however, the Plaintiff has identified sufficiently specific and identifiable funds to support an action for conversion.  The Plaintiff seeks to recover the amounts of: (1) the annuity surrenders signed by Gregg Rowland; and (2) certain checks written on the joint bank account signed by Anne Rowland.  See Decatur Auto Ctr., 276 Ga. at 820 ("Conversion of checks is actionable because checks designate specific amounts of money for use for specific purposes.").

The Plaintiff has the burden of proving his conversion claim by establishing that the Defendants exercised dominion over Mr. Rowland's property without his authorization.  It is undisputed that the Defendants deposited the money at issue into their bank account and, therefore, exercised dominion over the funds.  Thus, this claim turns on whether the Defendants were authorized by William Rowland to execute the annuity surrenders and the specific checks drawn on his account.  See Lamb v. State Farm Mut. Auto Ins. Cos., 240 Ga. App. 363, 365 (1999) (unauthorized appropriation

of personal property is an essential element of conversion).   According to the Defendants, Mr. Rowland gave specific verbal instructions and authorized them to execute the checks and surrender authorizations.[3] (G. Rowland Dep. at 38-39, 46-47; A. Rowland Dep. at 96.)  The Plaintiff asserts that Mr. Rowland never authorized the Defendants to dispose of his property.  The only evidence offered in support of this contention is the Verified Complaint filed in this case and an affidavit of William Rowland, executed on October 8, 2002.  In the affidavit, Mr. Rowland testified that he "was quite surprised at the value of my annuity and was further very surprised at the withdrawals which had been made by my son Gregg A. Rowland utilizing the Power of Attorney I had signed in 1993."  (W. Rowland Aff. ¶ 7.)  Neither the affidavit nor the Verified Complaint, however, will be considered by the Court.

William Rowland's affidavit is hearsay, inadmissible unless it falls under one of the exceptions to hearsay set forth in the Federal Rules of Evidence.  The Plaintiff

---

[3]According to the Plaintiff, Gregg Rowland claims that he was authorized to execute the surrenders and to give gifts based upon the Power of Attorney.  This argument misconstrues Gregg Rowland's testimony.   First, Gregg Rowland acknowledges that the Power of Attorney did not authorize him to give gifts.  (G. Rowland Dep. at 38.)  Furthermore, contrary to the Plaintiff's argument, Gregg Rowland does not contend that he executed the surrenders based upon any specific authority granted by the Power of Attorney itself.  Rather, he asserts only that the Power of Attorney authorized him to sign the surrender authorizations on behalf of Mr. Rowland and in accordance with Mr. Rowland's express verbal instructions.  (G. Rowland Dep. at 47, 49-50.)

asserts that the affidavit falls under Rule 807 of the Federal Rules of Evidence, often referred to as the residual hearsay exception.  (<u>See</u> Pl.'s Notice of Intent Pursuant to F.R.E. Rule 807.)  The residual hearsay exception provides that:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 807.  Thus, in order to warrant admission under Rule 807, a statement must satisfy five requirements: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) interests of justice; and (5) notice.

The reliability of testimony cannot be taken for granted.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1254-55 (11th Cir. 1999).  In fact, out-of-court statements are generally inadmissible because they are presumed to be unreliable.  <u>United States v. Hall</u>, 165 F.3d 1095, 1110 (7th Cir. 1999); <u>see</u> <u>United States v. Deeb</u>, 13 F.3d 1532, 1538 (11th Cir. 1994).  Given the presumption of unreliability, and because it is not a firmly rooted hearsay exception, the residual exception is to be used "only rarely,

in truly exceptional circumstances." <u>United States v. Fernandez</u>, 892 F.2d 976, 982 (11th Cir. 1989).  As such, the proponent of a hearsay statement has the burden of establishing proof of trustworthiness.  <u>Id.</u>  The circumstantial guarantees of trustworthiness must "be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." <u>Idaho v. Wright</u>, 497 U.S. 805, 820 (1990); <u>Deeb</u>, 13 F.3d at 1538.  The mental condition of the declarant at the time he made the statement is one factor to consider when determining whether there are sufficient guarantees of trustworthiness. <u>Hall</u>, 165 F.3d at 1111; <u>Sherley v. Seabol</u>d, 929 F.2d 272, 274-75 (6th Cir. 1991); <u>Huff v. White Motor Corp.</u>, 609 F.2d 286, 293-94 (7th Cir. 1979).

At the time that he executed the affidavit, William Rowland's mental competency was of considerable concern.  The Plaintiff requested a mental status evaluation of Mr. Rowland approximately one week before the affidavit was executed. (Kwiatkowski Dep. at 57.)  The examining physician determined that Mr. Rowland had borderline severe or moderately severe cognitive impairment and that his recall ability was impaired.  (<u>Id.</u> at 60.)  In addition, the physician testified that Mr. Rowland "certainly had dementia," possibly attributable to cerebrovascular disease, alcoholic dementia, or Alzheimer's disease.  (<u>Id.</u> at 67.)  According to the physician, an individual suffering from dementia would suffer some degree of impaired reasoning,

comprehension, and judgment.  (Id. at 67-68.)  Under these circumstances, there are serious doubts as to William Rowland's mental competence at the time of making the affidavit.  Therefore, the Court finds that the statements lack the guarantees of trustworthiness necessary to justify admission under the residual hearsay exception.[4]

Like the affidavit, the Verified Complaint is hearsay that does not fall within the residual hearsay exception because it lacks the requisite circumstantial guarantees of trustworthiness.  Although the Verified Complaint was signed by William Rowland under oath, "the mere fact that a statement is made under oath is not enough to guarantee its trustworthiness."  Deeb, 13 F.3d at 1538.  Instead, the circumstances surrounding the Verified Complaint create a substantial question as to the trustworthiness of the statements contained therein.  First, within several months of signing the Verified Complaint, Mr. Rowland was "very confused and not very alert" during a hospital admission and was unable even to give a coherent medical history.  (Kwiatkowski Dep. at 54-55.)  This instance of diminished mental capacity raises doubt as to his mental status at the time he signed the Verified Complaint.  In addition, the statements contained within the Verified Complaint were drafted by Mr.

---

[4]In addition, the Court notes that this case was pending for nearly 18 months before William Rowland's death.  The Plaintiff was aware of Mr. Rowland's mental and physical condition but made no attempt to preserve Mr. Rowland's testimony at a deposition, where the Defendants would have had an opportunity for cross examination.

Rowland's counsel as a basis for this litigation.  The Verified Complaint serves as the opening statement in the Plaintiff's attempt to establish liability and recover damages from the Defendants.  Thus, it was certainly "prepared with the incentive to set forth the facts in the light most favorable to itself."  <u>Broga v. Northeast Utilities</u>, 315 F. Supp. 2d 212, 218 (D. Conn. 2004).  Under these circumstances, the statements contained within the Verified Complaint are not saved by the residual hearsay exception because they lack the necessary circumstantial guarantees of trustworthiness.  <u>See</u> <u>Kirk v. Raymark Indus., Inc.</u>, 61 F.3d 147, 167-68 (3d Cir. 1995) (responses to interrogatories were prepared with the incentive of avoiding liability and, therefore, lacked circumstantial guarantees of trustworthiness).  Absent any admissible evidence that the Defendants' actions were unauthorized, the Plaintiff has failed to create a genuine issue of fact as to the Defendants' liability for conversion. <u>See</u> <u>Lamb</u>, 240 Ga. App. at 365.

Nevertheless, the Plaintiff argues that even if Mr. Rowland instructed the Defendants to make the dispositions at issue, verbal authorization was insufficient to create a valid agency relationship based upon the equal dignity rule.  An agency relationship arises "wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1; <u>Atlanta Market Ctr. Mgmt. Co. v. McLane</u>, 269 Ga. 604, 606

(1998).  Generally, a written contract of agency is "not essential to the creation of the principal-agent relationship."  <u>Process Posters, Inc. v. Winn-Dixie Stores, Inc.</u>, 263 Ga. App. 246, 251 (2003); <u>Clyde Chester Realty Co. v. Stansell</u>, 151 Ga. App. 357, 358 (1979).  However, the equal dignity rule, codified in O.C.G.A. § 10-6-2, provides, in pertinent part, that: "Where the exercise or performance of an agency is by written instrument, the agency shall also be created by written instrument . . . ."  <u>See also</u> <u>Continental Ins. Co. v. Gazaway</u>, 216 Ga. App. 125, 126-27 (1994) ("[W]here the act to be performed by the agent must be executed with certain formalities, the creation of the agency must be executed with those same formalities.").  Although the language of the statute appears to be relatively broad, Georgia courts seem to have narrowed the application of the rule to those instruments that are expressly included within the statute of frauds.  <u>See</u> O.C.G.A. § 13-5-30 (setting forth obligations covered by statute of frauds).  Specifically, the Georgia Supreme Court has stated that under the equal dignity rule, "the authority of an agent to execute an instrument required by the statute of frauds to be in writing must also be in writing."  <u>Turnipseed v. Jaje</u>, 267 Ga. 320, 322 (1996) (sale of real estate); <u>Atlanta Surgical Ctr., Inc. v. Walton & Heard Office Venture</u>, 235 Ga. App. 283, 285 (1998) (same); <u>see</u> <u>20/20 Vision Center, Inc. v. Hudgens</u>, 256 Ga. 129, 133-34 (1986) (tenancy contract for a period in excess of one year); <u>Rohm & Haas Co. v. Gainesville Paint & Supply Co.</u>, 225 Ga. App. 441, 442

(1997) (guaranty); but see Home Fertilizer & Chemical Co. v. Strickland, 145 Ga. 197 (1916) (although account was closed by a written document signed by the agent, authorization was not required to be in writing); Ervin v. Automobile Club Ins. Co., 184 Ga. App. 496, 498 (1987) (wife was authorized to sign insurance contract on husband's behalf, even absent written authorization).  The Plaintiff has not cited to any Georgia case applying the equal dignity rule to instruments not falling within the statute of frauds.  The instruments at issue here are not required by the statute of frauds to be in writing and, thus, the equal dignity rule does not control.  Accordingly, verbal authorization was sufficient to create the agency relationship alleged to exist between William Rowland and the Defendants and to give effect to actions taken pursuant to that relationship.

Moreover, the Defendants' testimony that Mr. Rowland authorized them to act on his behalf with regard to the financial transactions at issue is sufficient to establish the existence of an agency relationship.  Under Georgia law, "one who is a party to the alleged relationship (principal or agent) may testify as a fact as to the existence or nonexistence of the relationship," provided that the statements have a supporting basis.  Process Posters, Inc., 263 Ga. App. at 251; Stallings v. Sylvania Ford-Mercury, Inc., 242 Ga. App. 731, 733 (2000).  The Defendants' statements that they were acting at the direction of Mr. Rowland are supported by the circumstances surrounding the

parties' relationship.  During the period in which the alleged agency existed, Mr. Rowland: (1) lived with and was being cared for by the Defendants; (2) appointed Gregg Rowland as his attorney-in-fact; and (3) made Anne Rowland a joint account holder on his checking account.  Furthermore, the Plaintiff does not contest the fact that Anne Rowland signed a number of checks on Mr. Rowland's behalf for certain expenses during this period.  (Pl.'s Mot. for Partial Summ. J., at 11.)  These facts provide support for the assertion that Mr. Rowland authorized the Defendants to carry out financial transactions on his behalf.  Thus, the Defendants are permitted to testify as to the existence of an agency relationship with Mr. Rowland.  As such, because the Plaintiff has not presented any admissible evidence to dispute the Defendants' assertion that Mr. Rowland verbally authorized their actions, the Defendants are entitled to summary judgment on the conversion claim.

B.    <u>Breach of Fiduciary Duty</u>

The Plaintiff alleges that Gregg Rowland had a fiduciary duty to stop anyone from taking financial advantage of William Rowland.  The Plaintiff claims that this duty was breached because Gregg Rowland: (1) authorized unscheduled annuity surrenders; (2) knew of checks being written on Mr. Rowland's account by Anne Rowland and did nothing to stop them; (3) represented to Mr. Rowland that Anne Rowland was an accountant; and (4) failed to keep accurate records of Mr. Rowland's

accounts. Both parties move for summary judgment on this claim. To prove a claim of breach of fiduciary duty, the plaintiff must establish three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by the breach. <u>SunTrust Bank v. Merritt</u>, 272 Ga. App. 485, 489 (2005). It is undisputed that a fiduciary relationship existed pursuant to the Power of Attorney. Gregg Rowland contends, however, that he did not breach any fiduciary duty owed to Mr. Rowland. As discussed above, the Plaintiff has not offered any admissible evidence that establishes that the annuity surrenders and checks were not authorized by William Rowland. Thus, the undisputed evidence shows that Gregg Rowland discussed the financial transactions with his father and acted pursuant to his father's instructions. Therefore, the Plaintiff has not established that Gregg Rowland breached his fiduciary duty. In addition, even if Gregg Rowland misrepresented that his wife was an accountant,[5] the Plaintiff has failed to show that any such misrepresentation proximately caused the alleged damages. Summary judgment for the Defendants on the breach of fiduciary duty claim is proper.

C.      <u>Constructive Fraud</u>

---

[5]Anne Rowland has a degree in business administration, which required classes in accounting, and has worked as a bookkeeper but is not a licensed Certified Public Accountant. (<u>See</u> A. Rowland Dep. at 10.)

The Plaintiff asserts a claim for constructive fraud against the Defendants, alleging that the Defendants failed to act in good faith and with due regard to Mr. Rowland's interests.[6]   "Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another."  O.C.G.A. § 23-2-51(b); Aliabadi v. McCar Dev. Corp., 249 Ga. App. 309, 313 (2001).  Like a claim of actual fraud that alleges nondisclosure of a material fact, in order to establish constructive fraud, the plaintiff must prove the existence of a confidential relationship. Unlike actual fraud, however, constructive fraud does not require a showing of intent. Rather, fraud is presumed based upon the relationship between the parties.  Garbutt v. Southern Clays, Inc., 894 F. Supp. 456, 461 (M.D. Ga. 1995).  Nevertheless, even assuming that a confidential relationship existed between Mr. Rowland and the Defendants and that the Defendants concealed a material fact, summary judgment is

---

[6]In the Verified Complaint, the Plaintiff asserted a claim for constructive fraud. However, he now contends that "the gravaman of that count as alleged is actual fraud and undue influence."  (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 21.)  Even assuming that is correct, the fact remains that actual fraud and undue influence, claims distinct from constructive fraud, were not pled.  The burden is on the Plaintiff to plead the necessary causes of action applicable to the alleged circumstances.  Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with particularity.  Fed. R. Civ. P. 9(b).  Such particularity is absent from the Verified Complaint.  The Court will not construe the constructive fraud claim to include, or to be superseded by, separate claims for actual fraud or undue influence.

warranted.  Constructive fraud is an equitable doctrine and cannot be used as a means to recover damages.  <u>Aliabadi</u>, 249 Ga. App. at 313; <u>Wall v. Century 21 Winnerville Realty</u>, 244 Ga. App. 762, 765 (2000).  Because the Plaintiff does not seek equitable relief, but rather seeks only to recover money damages, Compl. ¶ 45, the Defendants are entitled to summary judgment on the constructive fraud claim.  <u>See</u> <u>Wall</u>, 244 Ga. App. at 765.

   D.   <u>Civil Conspiracy</u>

   The Plaintiff claims that the Defendants acted in concert to convert Mr. Rowland's funds through Gregg Rowland's position as attorney-in-fact and Anne Rowland's status as joint account holder.  Under Georgia law, "[t]o recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort."  <u>Premier/Georgia Mgmt. Co., Inc. v. Realty Mgmt. Corp.</u>, 272 Ga. App. 780, 788 (2005).  A conspiracy alone does not create a cause of action.  Rather, the basis for the action is not the conspiracy alleged but the tort committed against the plaintiff and the resulting damage.  <u>Association Servs., Inc. v. Smith</u>, 249 Ga. App. 629, 634 (2001).  Thus, "[a]bsent the underlying tort, there can be no liability for civil conspiracy."  <u>Premier/Georgia Mgmt. Co., Inc.</u>, 272 Ga. App. at 788.  Because the Plaintiff's underlying tort claim fails, the civil

conspiracy to commit conversion claim cannot be maintained.  Summary judgment for the Defendants is therefore appropriate.

      E.    <u>Punitive Damages</u>

Under Georgia law, punitive damages may be awarded whenever there is evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  However, "a claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach.  Punitive damages may not be recovered where there is no entitlement to compensatory damages."  <u>Southern Gen. Ins. Co. v. Holt</u>, 262 Ga. 267, 270 (1992).  The Court has granted summary judgment for the Defendants on all of the Plaintiff's claims for damages.  Thus, summary judgment on the punitive damages claim is warranted.

      F.    <u>Accounting</u>

The Plaintiff alleges that Gregg Rowland was required, pursuant to the Power of Attorney, to provide annual accountings and that no such accountings were ever rendered.  Gregg Rowland testified that every financial transaction was authorized by and discussed with Mr. Rowland.  As discussed above, the Plaintiff has not presented any admissible evidence to the contrary nor is there any evidence that these

discussions were insufficient to satisfy the accounting requirement of the Power of Attorney.  Summary judgment is proper.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment [Doc. 111] is DENIED, and the Defendants' Motion for Summary Judgment [Doc. 153] is GRANTED.  The parties have fully briefed the issues raised in both summary judgment motions, and scheduling oral argument at this late date would add unnecessary delay to the litigation.  Therefore, the Defendants' Motion for Oral Argument [Doc. 159] is DENIED, and the Plaintiff's Motion for Oral Argument [Doc. 160] is DENIED.

SO ORDERED, this 16 day of November, 2005.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge